UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/11/2019

JOSE PIZARRO,

                      Plaintiff,

        -against-

JOSEPH PONTE, *et al.*,

                      Defendants.

------------------------------------------------------------ X

17 Civ. 4412 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Jose Pizarro brings this action under 42 U.S.C. § 1983 and New York state law against Defendants the City of New York ("the City"), New York City Department of Health and Mental Hygiene ("HMH"), New York City Department of Correction ("DOC"), New York City Board of Correction ("BOC"), Commissioner Cynthia Brann,[1] former Commissioner Joseph Ponte, Captain Morris, Correction Officer ("C.O.") Geradeau, C.O. Overton and C.O. Peters.[2] Defendants move for summary judgment on all claims under Federal Rule of Civil Procedure 56. For the following reasons, Defendants' motion is granted in part and denied in part.[3]

---

[1] Brann is the current Commissioner of the Department of Correction. Pursuant to Federal Rule of Civil Procedure 25(d), Brann is substituted for former Commissioner Joseph Ponte in the claims against Ponte in his official capacity. *Corr. Officers' Benevolent Ass'n v. City of New York*, No. 17 Civ. 2899, 2018 WL 2435178, n.1 (S.D.N.Y. May 30, 2018).

[2] Defendants' names are taken from the Complaint, Amended Complaint and Second Amended Complaint collectively. Captain Goeed was initially named as a Defendant but is dismissed because, at the October 10, 2018, initial pretrial conference, Plaintiff narrowed his claims to those arising out of his May 2, 2017, rehousing, and Goeed was not involved in that incident.

[3] Plaintiff did not respond to Defendants' Rule 56.1 statement, which ordinarily would be construed as a concession under Local Rule 56.1. On July 24, 2018, Plaintiff filed a document styled as a motion for summary judgment. Given Plaintiff's pro se status and the instruction that "[t]he submissions of a *pro se* litigant must be construed liberally," *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018), the failure to respond is excused, *see, e.g.*, *Roland v. Ponte*, No. 17 Civ. 2758, 2018 WL 4609109, at *1 n. 1 (S.D.N.Y. Sept. 25, 2018), and Plaintiff's July 24, 2018, filing is construed as Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

## I. BACKGROUND

The facts below are drawn from the record and are construed in favor of Plaintiff as the nonmoving party. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017). Plaintiff's claims arise from events on May 2, 2017, when he was transferred from the Mental Observation unit to General Population at the Anna M. Kross Correctional Facility ("AMKC") on Rikers Island.

From February 2016 until August 2018, Plaintiff was incarcerated by DOC. In April 2017, Plaintiff was housed in the Mental Observation unit.

On May 1, 2017, Plaintiff had a medication follow-up appointment with Aleen Boyd-Mckoy, a nurse practitioner. At this appointment, Plaintiff told Boyd-Mckoy that he was feeling depressed and paranoid. When Boyd-Mckoy asked Plaintiff how he felt living in the Mental Observation unit, he told Boyd-Mckoy that he felt safer there because of the unit's private cells and that he did not want to be moved into General Population. Boyd-Mckoy agreed with Plaintiff and told him not to worry because he would not be moved into General Population any time soon.

On May 2, 2017, Dr. Kristila Brace completed a Housing Disposition report for Plaintiff. The report states that Plaintiff was discharged from the Mental Observation unit because his symptoms had stabilized and that observation had "revealed [the] absence of symptoms warranting [Mental Observation] housing."

On May 2, 2017, C.O. Geradeau came to Plaintiff's cell and ordered Plaintiff to submit to a strip search. Geradeau told Plaintiff that if he did not comply with the order, he would be discharged from the Mental Observation unit and rehoused in General Population. Plaintiff told Geradeau that the law required that a doctor approve his discharge and that his doctor, who he

2

had seen the day before, did not say he would be discharged. Geradeau told Plaintiff that HMH had signed him out of the Mental Observation unit. Before leaving Plaintiff's cell, Geradeau told Plaintiff that he would be strip searched and discharged from the mental health dorm "the hard way."[4]

Geradeau returned with C.O. Overton, who opened Plaintiff's cell door and told him to remove his clothing for a strip search so that he could be discharged from the Mental Observation unit and sent to General Population. Plaintiff then removed his clothing, squatted and put his hands on his head.[5] Geradeau and Overton verbally abused him while they waited for Captain Morris to come. When Plaintiff asked them where the legally-required cameras were during this strip search, the C.O.s said that they were the law.

Morris arrived, told Plaintiff that he "shouldn't fuck with her," that he would "get [his]," and ordered him to pack his things while naked. When Plaintiff instead started getting dressed, Morris told him to stop and instructed the officers to go into Plaintiff's cell. Overton threw Plaintiff to the ground,[6] after which Geradeau, Overton and C.O. Peters assaulted Plaintiff with punches. When Plaintiff yelled for help, Overton put him in a chokehold[7] and Peters held his hands down. Plaintiff passed out and awoke to a slap from Peters. Morris -- who was outside or almost in Plaintiff's cell -- told Plaintiff, who was dizzy and in pain, to get dressed. The guards handcuffed Plaintiff and moved him to General Population. During the transfer, Overton twisted

---

[4] During his deposition, Plaintiff asserted that prior to Captain Morris's arrival no one had told Plaintiff he would be transferred, but Plaintiff later stated that Geradeau told Plaintiff he would be moved to General Population if Plaintiff did not remove his clothes.
[5] At the October 10, 2017, initial pretrial conference, Plaintiff said he refused the strip search. At his deposition, however, he asserted that he had been strip searched.
[6] During his deposition, Plaintiff stated that Overton threw Plaintiff on the bed.
[7] During his deposition, Plaintiff maintained that "Officer Overton smothered [him] with a pillow so [he] couldn't breathe," and stated several times that Overton suffocated him.

Plaintiff's wrist. Plaintiff told Overton to stop twisting his wrist and asked Morris to tell Overton to comply. Plaintiff's medical record from the day of the incident states that his left wrist had mild swelling, redness and a limited range of movement. The "impression" section of Plaintiff's May 3, 2017, x-ray record states "[n]o fracture." As a result of the May 2, 2017, assault, Plaintiff maintains that he suffers nerve damage in his left wrist and mental illnesses including post-traumatic stress disorder, anxiety, depression and insomnia. Plaintiff also has injuries in his right shoulder and left knee.[8]

Over the next few days, Plaintiff sent letters to the BOC, Commissioner Joseph Ponte, the Warden of AMKC and the Deputy of Security of AMKC complaining about the May 2, 2017, incident. Plaintiff also submitted a grievance form in which Plaintiff stated that he was strip searched, verbally abused and beaten in his cell. Plaintiff never received a response to his grievance and did not appeal the non-response.

## II.  LEGAL PRINCIPLES

### A.  Summary Judgment

Summary judgment is appropriate if the record establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113 (quoting *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986)). The evidence is construed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in the nonmoving party's favor. *See id.*

---

[8] During his deposition, Plaintiff stated that his knee and shoulder injuries stemmed from incidents in 2016.

### B. Pro se Pleadings and Briefs

Where, as here, a party appears pro se, a court must construe "the submissions of a *pro se* litigant . . . liberally" and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted) (emphasis in original) (collecting cases); *accord Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015). Pro se status does not, however, "relieve [a non-movant] of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted); *accord O'Callaghan v. Uber Corp. of Cal.*, No. 17 Civ. 2094, 2018 WL 3302179, at *5 (S.D.N.Y. July 5, 2018).

## III. DISCUSSION

Plaintiff's pleadings are construed to assert claims under § 1983 for denial of procedural due process for moving him from the Mental Observation unit to General Population, and for excessive force; and under state law for assault and battery.[9]

In order to succeed on a claim under § 1983, a plaintiff must establish that "(1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir.

---

[9] Plaintiff's submissions are not construed to include a denial of medical care claim because no Defendant is a medical professional, and Defendants acted in accordance with the recommendations of a medical professional who cleared Plaintiff for transfer. Even if Plaintiff had claimed that a medical professional denied medical care by approving his transfer, it is unlikely that the claim would rise to the level of constitutional challenge. *See, e.g.*, *Figueroa v. Cty. of Rockland*, No. 16 Civ. 6519, 2018 WL 3315735, at *6 (S.D.N.Y. July 5, 2018) ("Medical malpractice, misdiagnosis and the decision not to treat based on an erroneous view that the condition is benign or trivial does not rise to the level of deliberate indifference.") (internal quotation marks omitted).

2015) (internal quotation marks omitted); *accord Gumora v. City of New York*, No. 17 Civ. 2300, 2018 WL 736018, at *3 (S.D.N.Y. Feb. 5, 2018). A plaintiff must also establish the personal involvement of each defendant in the alleged constitutional violation. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013); *accord Hansen v. Town of Smithtown*, 342 F. Supp. 3d 275, 294 (E.D.N.Y. 2018).

For the following reasons, summary judgment is granted as to all Defendants on all claims, except (1) the excessive force claim against Morris, Geradeau, Overton and Peters, and (2) the assault and battery claim against Geradeau, Overton and Peters.

### A. DOC and BOC

Defendants DOC and BOC are dismissed from this action because they are not suable entities. The New York City Charter states that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter Ch. 17, § 396; *see also Moore v. City of New York*, No. 15 Civ. 6600, 2017 WL 35450, at *8 (S.D.N.Y. Jan. 3, 2017) (noting that plaintiff had been "direct[ed] [] to name the City of New York as the proper Defendant for his allegations against the DOC"); *Colon-Rodriguez v. N.Y. City Dep't of Corr.*, No. 07 Civ. 8126, 2009 WL 995181, at *5 (S.D.N.Y. Apr. 13, 2009) (dismissing claims against BOC as a non-suable entity). Claims against DOC and BOC are properly brought against the City, which is already a Defendant.

### B. Exhaustion of Administrative Remedies

#### 1. Law

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Failure to exhaust administrative remedies is an affirmative defense under the PLRA . . . ." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). "[D]efendants bear the initial burden of establishing the affirmative defense of non-exhaustion 'by pointing to "legally sufficient sources" such as statutes, regulations, or grievance procedures' which demonstrate that 'a grievance process exists and applies to the underlying dispute.'" *Id.* at 126 n.6 (quoting *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)). Once a defendant has sufficiently established that a grievance process exists, the inmate plaintiff must show that he has properly exhausted his claims, "which means using all steps that the prison grievance system holds out, and doing so properly (so that the prison grievance system addresses the issues on the merits)." *Id.* at 122 (alterations, emphasis and internal quotation marks omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

"[T]he PLRA does not require the exhaustion of all administrative remedies, but only those that are 'available' to the inmate." *Hubbs*, 788 F.3d at 59; *accord Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An inmate's failure to exhaust administrative remedies is excused when the prison's grievance mechanisms are literally or constructively "unavailable" to him. *Priatno*, 829 F.3d at 123; *see, e.g.*, *Ross*, 136 S. Ct. at 1858. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs*, 788 F.3d at 59; *accord Grafton v. Cty. of Nassau*, No. 15 Civ. 4564, 2016 WL 8711072, at *3 (E.D.N.Y. July 15, 2016).

"[P]risoners must complete the administrative review process in accordance with the applicable procedural rules -- rules that are defined not by the PLRA, but by the prison grievance process itself." *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (quoting *Jones v. Bock*, 549

7

U.S. 199, 218 (2007) (internal citation and quotation marks omitted)); *accord Sanders v. City of New York*, No. 16 Civ. 7246, 2018 WL 3117508, at *4 (S.D.N.Y. June 25, 2018). As a Rikers Island detainee during the relevant period, "Plaintiff's grievance is governed by the Inmate Grievance and Request Program ('IGRP') . . . ." *See Sanders*, 2018 WL 3117508, at *4; *see also Girodes v. City of New York*, No. 17 Civ. 6789, 2018 WL 3597519, at *3 (S.D.N.Y. July 26, 2018) ("The [IGRP] sets out the grievance procedures for inmates at Rikers Island."). The IGRP steps for prisoners are: first, submit a complaint for informal resolution; second, if the inmate "disagree[s] with the proposed resolution, [the inmate has] five business days to appeal and request a formal hearing"; third, if the inmate "disagree[s] with the [Inmate Grievance Resolution Committee]'s disposition, [the inmate has] five business days to appeal to the commanding officer"; fourth, if the inmate disagrees with the commanding officer's disposition, the inmate has "five business days to appeal to the Central Office Review Committee", who "will render a disposition within 15 business days of receiving the appeal." IGRP § IV(D)-(J), Attachment B.[10] "The inmate must take each of the four steps to exhaust the administrative grievance process." *Sanders*, 2018 WL 3117508, at *4 (internal quotation marks omitted); *see* IGRP § II.E ("As a matter of law, an inmate is often required to 'exhaust administrative remedies' such as those available through the IGRP before seeking relief from the judicial system or any other external agency. Failure to file a grievance or request with the IGRP may prevent an inmate from seeking external relief.").

---

[10] The Court takes judicial notice of the IGRP. *See, e.g.*, *Sanders*, 2018 WL 3117508, at *4 n.1 ("It is a common practice in this District to take judicial notice of the version of the IGRP in effect at the time of the events giving rise to [a prisoner's] claim.") (internal quotation marks omitted) (alteration in original).

### 2. Due Process Rehousing Claim

Plaintiff failed to exhaust his administrative remedies with regard to the due process rehousing claim, which is subject to the IGRP. *See, e.g.*, *Houston v. Horn*, No. 09 Civ. 801, 2010 WL 1948612, at *6–8 (S.D.N.Y. May 13, 2010) (noting that housing transfers are "subject to resolution through the IGRP" and granting the defendants summary judgment on the issues for which the defendants raised non-exhaustion). In his deposition, Plaintiff stated that he did not appeal his grievance regarding his May 2, 2017, housing transfer beyond the first step "because it was never answered." Failing to pursue a grievance for which no response is received is not excused. *See Mena v. City of New York*, No. 13 Civ. 2430, 2016 WL 3948100, at *3 (S.D.N.Y. July 19, 2016) (collecting cases) ("[T]he law is well-settled that an inmate's failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies.") (internal quotation marks omitted). Summary judgment is granted on Plaintiff's claim arising from his transfer from the Mental Observation unit to General Population.

### 3. Excessive Force Claim

The IGRP exempts certain categories of complaints from its own administrative process. These include complaints for the use of force or assault. IGRP § IV.B.2.b ("Inmate allegations of physical or sexual assault or harassment by either staff or inmates are not subject to the IGRP process."). As a result, a prisoner's claims for excessive force and assault are not subject to the affirmative defense of failure to exhaust administrative remedies because he failed to use the IGRP process. *See Taylor v. City of New York*, No. 16 Civ. 7857, 2018 WL 1737626, at *4 (S.D.N.Y. Mar. 27, 2018) (collecting cases).

Because the IGRP was not available to Plaintiff for the excessive force claim and assault and battery claims, he has not failed to exhaust available administrative remedies. Defendants have not "point[ed] to legally sufficient sources such as statutes, regulations, or grievance procedures which demonstrate that a grievance process exists and applies to the underlying dispute." *Priatno*, 829 F.3d at 126 n.6 (internal quotation marks omitted).

In support of their contention that Plaintiff failed to satisfy the PLRA's exhaustion requirement for his excessive force claim, Defendants cite three cases: *Richardson v. New York State Department of Corrections*, No. 13 Civ. 6189, 2014 WL 3928785, at *5–7 (S.D.N.Y. Aug. 11, 2014), *affirmed*, 633 F. App'x 816 (2d Cir. 2016); *Perez v. City of New York*, No. 14 Civ. 7502, 2015 WL 3652511, at *2–4 (S.D.N.Y. June 11, 2015); and *Diezcabeza v. Lynch*, 75 F. Supp. 2d 250, 255 (S.D.N.Y. 1999). These cases are distinguishable.

*Richardson* and *Diezcabeza* involved exhaustion in the New York State corrections system, but here Plaintiff was in the custody of -- and subject to the rules of -- the City DOC, not the State. *See, e.g.*, *Kearsey v. Williams*, No. 99 Civ. 8646, 2004 WL 2093548, at *3–4 (S.D.N.Y. Sept. 20, 2004) (vacating a dismissal based on the defendant's assertion that the State IGP applied when plaintiff was subject to the City's IGRP); *see also Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003) ("Courts should be careful to look at the applicable set of grievance procedures, whether city, state or federal."). *Perez* involved a condition of confinement claim that, unlike allegations of staff-on-inmate assault, is not expressly exempted from the IGRP. *Perez*, 2015 WL 3652511, at *1; *see* IGRP App. A at 1 (listing "Environmental," "Housing," "Law Library," "Medical (complaints involving Department personnel)," "Personal Hygiene," "Phone," "Property" and "Recreation" as "categories/issues . . . subject to the [IGRP] process").

For these reasons, Defendants' failure to exhaust administrative remedies affirmative defense is dismissed as to Plaintiff's excessive force claim.

### C. Excessive Force Claim

Plaintiff's excessive force claim has two components -- the first relates to his handcuffing, and the second relates to the alleged attack. Summary judgment is granted to Defendants on the handcuffing claim, but denied as to the alleged attack.

#### 1. Handcuffing

"[E]xcessively tight handcuffing that causes injury can constitute excessive force . . . ." *Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015); *accord Ali v. Ramos*, No. 16 Civ. 01994, 2018 WL 1353210, at *5 (S.D.N.Y. Mar. 14, 2018). "Courts apply a separate standard to claims for excessive force in the use of handcuffs. The modified standard reflects the need for a careful balance." *Sullivan v. City of New York*, No. 17 Civ. 3779, 2018 WL 3368706, at *10 (S.D.N.Y. July 10, 2018) (internal quotation marks and citation omitted). "'[I]n evaluating the reasonableness of handcuffing, courts typically consider evidence that: (1) the handcuffs were unreasonably tight; (2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and (3) the degree of injury to the [plaintiff's] wrists.'" *Rivera v. Samilo*, No. 16 Civ. 1105, 2018 WL 1701935, at *10 (E.D.N.Y. Mar. 30, 2018) (alterations in original) (quoting *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 724 (S.D.N.Y. 2017)). "Courts in this Circuit have generally found that handcuffing does not suffice for an excessive force claim unless it causes some injury beyond temporary discomfort or bruising. The injuries need not be severe or permanent, but must be more than merely de minimis." *Othman v. City of New York*, No. 13 Civ. 4771, 2018 WL 1701930, at *7 (E.D.N.Y. Mar. 31, 2018) (internal quotation marks and citation omitted).

Plaintiff's excessive force claim fails because his injuries of mild swelling, redness and limited movement are insufficient to state a constitutional violation as a matter of law. *See Sullivan*, 2018 WL 3368706, at *10 (collecting cases in which bruising, swelling and contusions are insufficient to support a handcuffing excessive force claim). Plaintiff's medical records from the day of the incident note that his left wrist had mild swelling, redness and a limited range of movement. The x-ray did not reveal a fracture. Although Plaintiff alleges that he suffers nerve damage as a result of the incident, "unsubstantiated claims of nerve damage, in the absence of corroborating medical evidence, are insufficient to sustain a claim of excessive force from handcuffing." *Cancel v. Kelly*, No. 13 Civ. 6007, 2016 WL 590230, at *5 (S.D.N.Y. Feb. 11, 2016) (internal quotation marks omitted); *accord Scalpi v. Amorim*, No. 14 Civ. 2126, 2018 WL 1606002, at *22 (S.D.N.Y. Mar. 29, 2018). Summary judgment is granted to Defendants on the excessive force claim as it relates to handcuffing.

### 2. Physical Attack

Resolving all factual disputes in favor of Plaintiff as the non-moving party, a reasonable fact finder could conclude that, based on the evidence in the record, Defendants Geradeau, Overton and Peters attacked Plaintiff with excessive force.

At the summary judgment stage, a court "may not make credibility determinations or weigh the evidence." *Proctor v. LeClaire*, 846 F.3d 597, 607–608 (2d Cir. 2017) (internal quotation marks omitted). "On a motion for summary judgment, the court is to identify factual issues, not to resolve them." *In re Dana Corp.*, 574 F.3d 129, 156 (2d Cir. 2009); *see also Serrano v. Lopez*, No. 14 Civ. 560, 2015 WL 5305948, at *5 (S.D.N.Y. Sept. 10, 2015). "[D]istrict courts should not 'engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." *Rivera v. Rochester Genesee Reg'l Transp.*

*Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011)). "If there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was ambiguous, confusing, or simply incomplete." *Jeffreys v. City of New York*, 426 F.3d 549, 555 n.2 (2d Cir. 2005) (alteration omitted); *accord Spizz v. United States*, 291 F.Supp.3d 447, 459 n.9 (S.D.N.Y. 2017).

Here, even though some of the details of Plaintiff's story have changed, the heart of the claim remains the same -- that he was assaulted on May 2, 2017, when he was removed from his cell and transferred from the Mental Observation unit to General Population. Whether or not the assault in fact occurred is an issue of material fact that requires determining Plaintiff's credibility and weighing the evidence -- a role reserved for a jury. *See, e.g.*, *Proctor*, 846 F.3d at 607–608 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (internal quotation marks omitted).

Defendants assert that, based on the record, no reasonable factfinder could believe Plaintiff's allegation that he was pummeled by officers. This argument is unpersuasive. In excessive force cases, a district court may grant summary judgment against a plaintiff "where undisputed medical records *directly and irrefutably* contradict a plaintiff's description of his injuries." *See Henry v. Pierce*, No. 11 Civ. 845, 2017 WL 3610507, at *2 (S.D.N.Y. Aug. 21, 2017) (emphasis in original) (internal quotation marks omitted). But the medical records in this case do not directly and irrefutably contradict Plaintiff's description of what happened on May 2, 2017. Of interest, the medical record states that Plaintiff was generally "well-appearing, no acute distress," and that his head was "normocephalic, atraumatic" -- i.e. normal. Although

13

Plaintiff's physical exam does not directly affirm Plaintiff's story, unlike the cases cited by Defendants, it also does not "directly and irrefutably contradict" Plaintiff's version of the May 2, 2017, attack. *Compare, e.g.*, *Jeffreys*, 426 F.3d at 554–55 (unreasonable to believe the plaintiff's allegation that he had been beaten with a flashlight and thrown out a window by a police officer when multiple doctors expressly found no evidence of head trauma and the plaintiff thrice admitted that he had jumped out of a window while fleeing police until, nine months after the incident, he changed his story to allege that he had been thrown out of the window); *Henry v. Brown*, No. 14 Civ. 2828, 2016 WL 3079798, at *3 (E.D.N.Y. May 27, 2016) (unreasonable to believe the plaintiff's allegation that the defendant pushed the plaintiff, causing a leg injury so severe the plaintiff almost lost his leg and a head injury that rendered the plaintiff unconscious in pool of blood for over an hour, where medical records stated that the plaintiff's leg had minor bleeding caused by plaintiff picking an old scab, that plaintiff's head was normal and that plaintiff was ambulatory the day of the incident) *with Burks v. Perrotta*, No. 13 Civ. 5879, 2015 WL 2340641, at *6 (S.D.N.Y. May 15, 2015) (denying summary judgment where there was a plausible explanation for the inconsistencies in the plaintiff's story).

Summary judgment is denied on Plaintiff's claims for excessive force resulting from the alleged assault on May 2, 2017.

### D. The City and HMH[11]

A plaintiff may bring suit against a local government or municipality under § 1983 if the injury complained of resulted from the "execution of a government's policy or custom . . .

---

[11] HMH is a suable entity. N.Y.C. Charter Ch. 22, § 564 ("The department may sue and be sued in and by the proper name of 'Department of Health and Mental Hygiene of the City of New York' . . . ."); *accord Rivera v. Bloomberg*, No. 11 Civ. 4325, 2012 WL 3655830, at *11 (S.D.N.Y. Aug. 27, 2012).

[which] may fairly be said to represent official policy." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *accord Corso v. City of New York*, No. 17 Civ. 6096, 2018 WL 4538899, at *12 (S.D.N.Y. Sept. 20, 2018).

The record contains no evidence that the City or HMH had a "policy or custom" to mistreat prisoners upon their transfer from a Mental Observation unit to General Population. *See, e.g.*, *Youngblood v. City of New York*, No. 15 Civ. 3541, 2016 WL 3919650, at *5 (S.D.N.Y. July 27, 2016) ("Without more, [p]laintiff's bare allegations of the existence of a custom and policy and his conclusory assertion that the policy was linked to his constitutional injuries are insufficient to state a *Monell* claim."). Defendants the City and HMH are granted summary judgment on the claims against them.

### E. Official Capacity Claims

"It is settled that suits against officers in their official capacity . . . are directed at the office itself." *Annucci*, 895 F.3d at 187 (alteration in original) (internal quotation marks omitted); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991). "In an official capacity suit, 'the real party in interest . . . is the governmental entity and not the named official.'" *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (alteration in original) (quoting *Hafer*, 502 U.S. at 25). Because Plaintiff's claims against the City are identical to all his claims against the individual Defendants in their official capacities, the official capacity claims are duplicative and dismissed. *See, e.g.*, *Ball v. N.Y. City Council*, No. 17 Civ. 4828, 2018 WL 4625625, at *2 (S.D.N.Y. Sept. 26, 2018).

### F. Commissioner Ponte

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone*, 719 F.3d at 135 (internal quotation marks omitted). Traditionally, personal involvement can be established in five ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (emphasis omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[12]

The evidence is insufficient to find Defendant Commissioner Ponte personally liable as a matter of law. A May 4, 2017, letter from Plaintiff to Ponte is the only evidence in the record that relates to him. Ponte's alleged receipt and failure to respond to Plaintiff's letter is insufficient to establish personal liability. *See Morgan v. Dzurenda*, No. 14 Civ. 00966, 2018

---

[12] The Second Circuit has yet to determine how *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), affects *Colon*. *See Grullon*, 720 F.3d at 139 (recognizing possible conflict among the cases); *Dunham v. City of New York*, 295 F. Supp. 3d 319, 330 n.9 (S.D.N.Y. 2018) ("The continuing validity of *Colon* remains unresolved and the issue continues to be a matter of disagreement among District Judges within the Circuit."). This issue is not presented and need not be addressed in this case because Plaintiff has failed to establish Defendant Ponte's personal involvement under any of the *Colon* categories as a matter of law. *See Ross v. Correct Care Sols. LLC*, No. 11 Civ. 8542, 2013 WL 5018838, at *5 n.10 (S.D.N.Y. Sept. 13, 2013) ("The Supreme Court's decision in *Iqbal*, which found that a supervisor can be held liable only 'through the official's own individual actions,' arguably casts doubt on the continued viability of some of the categories set forth in *Hastings on Hudson* and *Colon*. For the purposes of this case, however, it is not necessary to explore this issue because the complaint fails to plead that [the individual defendants] were personally involved under any of the *Hastings on Hudson* categories.") (internal citations omitted).

WL 4096630, at *9 (D. Conn. Aug. 28, 2018) (an unanswered inmate request form addressed to the Warden was insufficient to establish personal liability); *Inesti v. Hogan*, No. 11 Civ. 2596, 2013 WL 5677046, at *8 (S.D.N.Y. Sept. 30, 2013) (no personal liability because "letter complaints alone do not establish personal involvement"). Summary judgment is granted to Ponte on all claims.

### G. Captain Morris

An officer "is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Othman v. City of New York*, 2018 WL 1701930, at *8 (internal quotation marks omitted); *see also Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) ("A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it."); *Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) ("Correction officers can be held liable under Section 1983 for not intervening to protect the constitutional rights of inmates from infringement by other officers.").

A reasonable fact finder could conclude that Defendant Captain Morris was personally involved in committing the alleged constitutional violation. Morris was present during the incident and did not intervene, even though she arguably could have, given her role as the officers' supervisor and her physical proximity to the scene. Morris is denied summary judgment for Plaintiff's excessive force claim.

### H. State Law Claims -- Assault and Battery

"[W]ith the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical." *Lloyd*, 246 F. Supp. 3d at 729 (internal quotation marks omitted). For the reasons stated above, summary judgment is denied for the state claims of assault and battery against Defendants Geradeau, Overton and Peters.[13] *See, e.g.*, *Christopher o/b/o N.C. v. City of Mount Vernon*, No. 16 Civ. 00137, 2018 WL 4757963, at *7 (S.D.N.Y. Sept. 28, 2018) (denying summary judgment on an assault and battery claim relying on the analysis used for a § 1983 excessive force claim).

Defendants argue that New York General Municipal Law § 50-k(6) prevents Plaintiff from pursuing state law claims because Plaintiff failed to serve a notice of claim. This argument is unpersuasive. The notice of claim requirement in § 50-k(6) does not apply "when the claim alleges injuries resulting from intentional wrongdoing or recklessness, misconduct for which the City has no obligation to indemnify an employee." *Hardee v. City of New York*, No. 10 Civ. 7743, 2014 WL 4058065, at *8 (S.D.N.Y. Aug. 14, 2014) (internal quotation marks omitted); *see* N.Y. Gen. Mun. Law § 50–k(3) ("[T]he duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee."). "Under New York Law, '[a]n "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact.' A "battery" is an intentional wrongful physical contact with another person without consent.'" *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (quoting *United Nat'l Ins. Co. v.*

---

[13] Unlike the federal claim of excessive force, the state claims of assault and battery do not survive against Defendant Morris because she did not engage in "intentional physical conduct placing [] [P]laintiff in imminent apprehension of harmful contact" or otherwise touch Plaintiff, which is required for individual liability on these claims. *See Thaw v. N. Shore Univ. Hosp.*, 12 N.Y.S.3d 152, 155 (2d Dep't 2015).

*Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)); *see Thaw v. N. Shore Univ. Hosp.*, 12 N.Y.S.3d 152, 155 (2d Dep't 2015). "To succeed on an assault or battery claim in the law enforcement context, a plaintiff must demonstrate that defendants' conduct 'was not reasonable within the meaning of the New York statute concerning justification for law enforcement's use of force in the course of performing their duties.'" *Randolph v. Metro. Transportation Auth.*, No. 17 Civ. 1433, 2018 WL 2943744, at *6 (S.D.N.Y. June 12, 2018) (quoting *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005)). To find Defendants Geradeau, Overton and Peters liable for assault or battery, a trier of fact would have to conclude that Defendants acted intentionally and unreasonably -- conduct that falls outside of § 50-k. *See id.* Plaintiff's failure to file a notice of claim does not preclude pursuit of his assault and battery claims against Defendants Geradeau, Overton and Peters.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgement is GRANTED in part and DENIED in part. Summary judgment is granted as to all Defendants on all claims *except* the (1) § 1983 excessive force claim against Defendants Morris, Geradeau, Overton and Peters for the alleged May 2, 2017, attack, and (2) assault and battery claim against Defendants Geradeau, Overton and Peters, for which summary judgment is denied. For clarity, the only remaining claims are the (1) § 1983 excessive force claim against Defendants Morris, Geradeau, Overton and Peters for the alleged May 2, 2017, attack (but not the handcuffing), and (2) assault and battery claim against Defendants Geradeau, Overton and Peter.

The Clerk of Court is respectfully directed to close the motion at Docket Number 70 and to mail a copy of this Opinion and Order to pro se Plaintiff. Separate orders will be issued setting trial dates and requesting pro bono counsel for Plaintiff.

Dated: February 11, 2019
 New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**